United States v. DiMartino All right, Mr. Murphy, you are free to take off your mask if you'd like, but not required to. You've got ten minutes total, but you've reserved two minutes for rebuttal. So that gives you eight minutes out of the gate. You may proceed. Thank you, Your Honors. May it please the Court, Tim Murphy, the Federal Public Defender's Office, the Western District. We're representing Mr. DiMartino in this action. He's appealing the denial of his compassionate release motion. As the Court knows, my client suffers from a number of physical and health-related infirmities that make him vulnerable during the pandemic. At the time that we filed this motion, at the time of the appeal, my client was housed at FCI Danbury in Connecticut. I have informed the Court that he has now been moved to a federal medical center in Butner, North Carolina. I thought before I get into the merits of our argument, I'd like to just address potential mootness issue and just make a contrast between a case that this Court recently decided last year that dealt with an analogous issue in United States v. Chestnut, where Mr. Chestnut, during the pendency of his appeal for a compassionate release motion, was released from custody and placed on supervised release. This Court found the appeal to be moot and dismissed it. Our case is distinguished from that. Of course, my client is now in another facility, is still under BOP custody. In fact, he's in a facility that now they say is towards the top in positive COVID results at this point. His case is not moot, and we ask that you don't dismiss it for that reason. Addressing the merits of our argument... That's true, Judge. We ask that it be remanded, Your Honor, and that the district court address the new circumstances, should you find that there is an abuse of discretion. But, I mean, your client could make a new request, right? A new compassionate release motion in light of the new circumstances. That is true, Judge. You'd have to go through the exhaustive administrative remedies, et cetera. We think it's consistent, though, with the reason why they enacted the First Step Act to do it in a more expedited way in this way. If my client has to go through that process again, it's going to extend it a number of months through motion practice, et cetera. The court relied, in any event, on the 3553A factor. So, for our purposes, does it matter that he's now in a different facility? It does, Judge. One of the cases cited by the government this past week is the Keat decision. In holding, and there was a different panel, but this court held that when a district court denies a compassionate release motion and does so for the sole basis of the 3553 factors, the district court need not determine the extraordinary and compelling reasons. What we are suggesting is different. We are suggesting that the court did not properly evaluate these circumstances. We're not making an argument that the determination wasn't made about the extraordinary and compelling reasons. We're saying that, at the very least, a district court should be compelled, under these circumstances, to properly evaluate what's in front of them. It seems, and I know it's the law of the circuit, it seems that the court is looking at the 3553 factors in a vacuum. And I can tell you that our client... Aren't we bound by our prior decision that you want us to not follow them? No, no. What I'm suggesting is that what the law of the circuit is, is that we cannot complain that the district court did not make a determination about this other category in the statute. And what we're suggesting is that the district court should be bound to at least evaluate properly these other circumstances. The reason I say that, consistent with the purpose of the First Step Act, what is the purpose of going through and revamping the statute if district courts are not going to be required to at least properly evaluate... Because they can assume everything you're saying is true on the situation in the jail and just assume it, not have to determine it. Just say, okay, even if it's true, your client is at higher risk for getting COVID or a bad outcome under the 3553A factors, he still doesn't warrant release. So isn't that what we said in Feet, that you could skip it if you take that assumption and your analysis would be no release. You don't need to go through all the details of the situation at the jail. And certainly as an appellate court, you're not going to sit there and say there's a checklist for what you have to actually have in each order. And I recognize that. However, if a court is going to address this other category, and the court did here, the court here really expressed unwarranted skepticism with regards to whether there was even an outbreak at all. So if the court doesn't address it at all, that's one thing. But if the court does address these other circumstances, it has to do so fairly. We say that that didn't occur here. But my client placed before the district court was significant evidence that there was an outbreak ongoing. And Your Honor, Judge Sullivan, I think it's page 160. I think you're about to look for the order. No, I'm just saying, it seems to me you're putting a lot of weight on the court's use of the phrase even if, suggesting that that expressed skepticism. But I think it's more just a reflection that assuming everything you said to be true, it's still not enough to overcome the factors set forth in 3553A. If we go up a couple of paragraphs, same page, the court describes what we were asserting as an outbreak as a purported uptick in the cases. I'd focus more on the use of the word purported. Well, the point is that that's a factual issue. It might require hearing. It might require a lot more work. But the judge is saying even assuming that to be true, it won't make a difference. Do we really want to make judges have to have hearings to figure out whether facts that are not going to be ultimately relevant are in fact true? Except that here, I don't disagree with the principles you set, Judge. But I would point out here, among the things that we cited to was the District of Connecticut's order on December 11th of 2020. Remember, the District of Connecticut was involved with that litigation, Martinez-Brooks litigation. They were closely monitoring that prison, and they came out with a decision, Judge Shea of that district, that there in fact was an urgency going on, that the cases were rising. Under these circumstances, the court describing this as a purported uptick, we believe does not give it the fair shake that it deserves. Do we need a hearing? Not necessarily, but what we place before the court, we think this shows an abuse of discretion that the court in two days turns this decision around without even getting feedback from the government and describes what we think we established as just a mere purported uptick. But the court said even if that's true. I mean, isn't the court signaling that that fact is not going to move the needle? But the court at the very least has to at least acknowledge what we think is unquestionable in our papers. What more should he have said? I mean, even if. I mean, what more should he have said? I mean, the facts actually of the underlying crime are really pretty egregious here, and that's clearly what was driving Judge Geraci's thinking. I'm not quite sure what more you think he should have done in light of the 3553A factors. If the court doesn't address the issue at all and doesn't describe it as just a purported uptick, that's one thing. But if the court's going to address it after what we've placed before the court, it cannot describe it just as purported. So this would be a totally different outcome if the court had said the documented uptick. That would be different even though the court is making clear that the uptick, whether documented or purported, is not going to move the needle. Using the phrase purported judge does inject doubt on something that there was no doubt about. Our point is that if the courts are going to deny these applications so quickly, they at least have purported. I mean, if you look at the definition, it doesn't mean false. It simply means that it has been represented. It means. I'm not going to go into a dictionary game, but I guess what I would just say is that my understanding of the word really means that it is stated, but it may not be true. Under these circumstances, this absolutely was true. There was an outbreak at the time of this motion. We would ask that the court send this back, remand, and address the new circumstances that my client is facing now. Okay, thank you. You've reserved two minutes for rebuttal. We'll now hear from Ms. Gregory on behalf of the government. Ms. Gregory, you can take off your mask if you want, but you are under no obligation to do so. Your call. Thank you. Good morning. May it please the court. Katherine Gregory, Assistant U.S. Attorney representing the United States. What's getting lost in Mr. DiMartino's argument is, as I think this panel has observed, the fact that the district court did not rely upon and, in fact, didn't even make a determination as to whether there were extraordinary and compelling reasons warranting a reduction. And this court's decision in Keat and various summary orders says that it does not have to do that when it relies on the 3553A factors. Those factors here weighed heavily on the district court in both the first and the second decision. And now what I'm hearing from Mr. DiMartino's counsel today is that the district court should have at least looked at the circumstances presented. I think he's making a slightly different argument, is that the district court discounted the extraordinary nature of what they were requesting and then compared it to the 3553A factors and then found no release. What he's suggesting is that that discounting of how extraordinary it was affected the balancing. So on page four and five of the decision, the judge said, the improvement of the conditions at the facility persuades the court that the risk the defendant faces, even if it could be said to be extraordinary and compelling, is not entitled to overwhelming weight in the calculus. And that says, by comparison, it starts weighing the factors. So I think the argument is that the district court discounted the extraordinary nature and that affects the weighing then of the 3553A factors. Do you understand what I'm saying? Yes, Your Honor. To be more precise, a better practice would be to say, assuming everything they're saying is true about the risks, and it is extraordinary at that level, I still find the 3553A factors. That would be the better phrasing or practice, I guess, if you're going to skip the analysis. What's your response to that? I don't think that the district court did skip the analysis. If we look at page three and four, and this is the first decision that I don't think is precisely the one on appeal. I shouldn't have said it that way. You're right. He didn't skip the analysis, but he discounted the extraordinary nature and then did the weighing against the 3553A factors. He basically said this is not as extraordinary because there's improved conditions at the jail, and they're suggesting his premise about the improved conditions at the jail was wrong and should be analyzed. We should analyze that because it could have affected the balancing. A defendant has to meet those three requirements, though, and all the district court, the three being the administrative exhaustion, the extraordinary and compelling, and then the satisfaction of the 3553A weighing. But the district court, all it did here was go straight to that 3553A analysis, and this is reflected in the second decision, which is on appeal here, where the district court had a quick turnaround because it noted that these 3553A factors pulled significant weight. That's what the district court said, significant weight, and there was a reason. It incorporated the sentencing transcript. It incorporated that first decision denying a reduction. No, that I think is the – in the second – you're right. In the second order, he clearly says even if he could satisfy the other elements, he goes straight to the 3553A factors, so I understand that. Yes, and in Keat, this court said that sole reliance on those 3553A factors is an alternative and independent basis for denial of relief. So as it stands, the district court's approach was a correct approach. I think Roney was in effect at the time that we did our briefing, but our 28J letter goes through those three recent cases. So that's the state, and the reason is because it looks at the defendant specifically. The district court here acknowledged that this defendant in particular has some medical issues, acknowledged the COVID-19 pandemic, and even in that first decision went into a little more detail about why it considered it serious, but then moved on to the more specific factors about this particular defendant, the nature of this offense, 23,000 images of child pornography across Mr. DiMartino's various devices, two violations of pretrial release, the most serious of which was the unsupervised contact with the 4-year-old boy who later made a disclosure to a CPS worker, and then Mr. DiMartino's attempt to get the father of that child to lie to the court and the FBI about the nature of that conduct. All of this was on the district court's mind. That's why it gave these factors significant weight. That's why it said even if these health factors, this condition at the prison, were extraordinary and compelling, these 3553A factors are greater weight, and the district court also noted, I think it's important, that the sentence of 125 months was and is appropriate, it said, and Mr. DiMartino had served less than half of that at the time that it made its decision. So based on this reasonable evaluation of those factors, it was within the court's discretion to deny the reduction, and this court should affirm that judgment. Thank you. All right, thank you very much. Mr. Murphy, you have two minutes of rebuttal time. Thank you, Your Honor. And through Judge Bianco's comments before, that pages 125 through 127, or begins around that time, was the first decision, and a lot of that analysis, we don't see any of that in the second decision. I recognize what the court has already commented on, but those comments that Your Honor was referencing was not under appeal right now. It certainly impacts the court's analysis when it's going through the second decision because he refers back to his first decision. I know the second decision seems clearly to be relying on the 3553A factors. That's, I think, the point. I was noting the issue that was created from the first one, but the second one is pretty clear. It just goes right to the 3553A factors, right? And our point, and I recognize that, Judge, our point in Sando is that the court should not be seeing this in a vacuum. I recognize that the court can go to the 3553 and indicate that a litigant loses. But in evaluating this, it makes no sense to have even enacted the First Step Act if in evaluating an individual's decision they don't at least fairly evaluate the extraordinary and compelling reasons that are alleged and fairly do that. Not having to make a determination, but just evaluate that category. And with that, I would ask that you remand so that district court can address the new circumstances. Thank you. Thank you very much, Mr. Murphy and Ms. Gregory. We will reserve decision.